WALTER WILHELM LAW GROUP
a Professional Corporation
Riley C. Walter #91839
Michael L. Wilhelm #101495
Matthew P. Bunting #306034
205 E. River Park Circle, Suite 410
Fresno, CA 93720
Telephone:　(559) 435-9800
Facsimile:　(559) 435-9868
E-mail:　rileywalter@W2LG.com
　　　　　mwilhelm@W2LG.com

Attorneys for Debtor in Possession

(SPACE BELOW FOR FILING STAMP ONLY)

# IN THE UNITED STATES BANKRUPTCY COURT

## EASTERN DISTRICT OF CALIFORNIA

### FRESNO DIVISION

| | |
|---|---|
| In re<br><br>DON ROSE OIL CO., INC, a California corporation;<br><br>　　Debtor in Possession.<br><br>Tax ID #:　94-2287631<br>Address:　205 N. Ben Maddox Way<br>　　　　　　Visalia, CA 93292 | **CASE NO. 17-12389-A-11**<br><br>Chapter 11<br><br>DC No.: WW-1<br><br>Date:　　June 26, 2017<br>Time:　　2:00 PM<br>Place:　　2500 Tulare St.<br>　　　　　　Fresno, CA 93721<br>　　　　　　Courtroom 11, 5th Floor<br>Judge:　　Honorable Fredrick E. Clement |

**DECLARATION OF JOHN CASTELLUCCI IN SUPPORT OF
MOTION FOR AUTHORITY TO USE FACTORING FINANCING**

I, John Castellucci, hereby declare and represent as follows:

1.　I am the CEO of Don Rose Oil, Inc. (hereafter "Debtor") Debtor is a jobber which purchases and delivers propane and other oil products to commercial businesses and farmers. It owns over 2,200 propane service tanks which it services.

2.　I make this Declaration in support of the Motion for Authority to Use Factoring Financing which I have read and reviewed. Except as otherwise indicated, all statements in this Declaration are based upon my personal knowledge or my opinion.

3. By this Motion, Debtor seeks to secure factoring financing so that day-to-day operations can continue operations including paying employees.

4. Debtor operates a business in which it purchases fuel and utilizes employees to deliver propane to and other oil products to customers. It is a highly competitive market and being able to deliver the product quickly and reliably is a key component top the value of the business. A business in this field that cannot deliver its products quickly will lose customers and eventually shut down due to the hyper-competitive nature of this market.

5. Debtor is seeking interim approval of factor financing. Exhibit "F" is a true and correct copy of a budget I have reviewed and approved showing what the use of factoring financing would be for the time period of June 22, 2017 through July 14, 2017 pending a further hearing to be held on or around July 12, 2017.

6. A further budget will be provided for approval prior to the final hearing on this Motion.

7. Debtor currently employs approximately 36 people, including myself. There is no source of future payment for employees other than the factoring financing which was in place prior to the filing of the bankruptcy.

8. An involuntary Chapter 7 bankruptcy case was filed against Debtor on June 19, 2017.

9. Prior to the involuntary bankruptcy, the Debtor's source of financing was a factoring arrangement with Sallyport Commercial Finance ("Sallyport"). Continuation of this relationship is the single most important and immediate need of the Debtor. Debtor has immediate need for financing to continue operations pending a future hearing.

//

10. The filing of this involuntary bankruptcy was unanticipated and has created substantial issues for the ongoing operations of the Debtor.

11. Debtor missed payday on June 20, 2017 because of the involuntary bankruptcy and the initial hesitation of Sallyport to advance funds after the involuntary bankruptcy was filed.

12. It was then agreed that if Debtor would file for a voluntary Chapter 11 bankruptcy, Sallyport would advance funds as an ordinary course of business expense during the involuntary bankruptcy period.

13. The additional funding from Sallyport was used to cover payroll expenses including employee wages and payroll taxes on June 21, 2017 in the amount of $109,000.00. Sallyport also advanced $35,000 to Debtor to be used as a retainer for Walter Wilhelm Law Group, $1,800 to cover the bankruptcy filing fee, and $50,000 to be used for short term oil product purchases pending a hearing on this Motion. Sallyport will not continue to supply factoring financing without interim court approval.

14. It was felt this would be sufficient until Debtor was able to bring this Motion before the court. Both Sallyport and Debtor agreed that these additional sums advanced would be pursuant to their existing agreements and consist of the sale of Don Rose Oil, Inc.'s accounts receivables to Sallyport under Texas law.

15. The factoring agreement between Sallyport and Debtor has allowed Debtor to continue its operations. Otherwise Debtor would have been unable to survive financially.

16. On June 22, 2017, Debtor filed its own Chapter 11 bankruptcy petition and became a debtor in possession.

17. It is vital to the business of Debtor to continue its relationship with

Sallyport. Without this, Debtor will not be able to purchase fuel for resale and pay personnel which will result in operations ceasing.

18    Further, customers and competitors of have learned of Debtor's financial troubles and this has created a situation where customer confidence is low and competitors are actively seeking to lure customers of Debtor away.

19.   In order to continue operating and formulate a Plan of Reorganization, Debtor has immediate need of factoring financing. The Budget (Exhibit "F") sets out the amounts of money needed from June 22, 2017 through July 14, 2017.

20.   By operating, I believe that Debtor will be able to service its customers to generate proceeds that have a greater value than the amount of factoring financing being sought. The funds will also preserve and protect the enterprise value of Debtor which is important for a propane delivery business, pending a further hearing.

21.   Denial of the factoring financing agreement would not benefit any creditor constituencies but it would cause significant harm to our business operations including making the business less valuable and causing it to cease operations. Without the factoring financing agreement, Debtor will be unable to make payroll or purchase enough propane and other oil products to produce a positive cash flow.

22.   The Debtor has been unable to secure credit with unsecured financing pursuant to Bankruptcy Code Section 364(a) or (b) allowed as an administrative expense under Bankruptcy Code Sections 503(b)(1) or on more favorable terms from any other sources.

23.   I am unaware of any secured creditors who have security interests in the accounts receivable and other personal property of Debtor higher in priority than that of Sallyport. However, the Debtor does seek authority to use the accounts receivable for

the factoring financing of any such creditor provided that the creditor was served with notice of this Motion. We believe that it is in the best interests of the creditors of this estate, and of Debtor to be allowed to continue to sell the accounts receivable for factoring financing. Without the use of the accounts receivable for factoring financing, Debtor will be forced to shut down.

24. Exhibit "A" is a true and correct copy of the existing Accounts Sale and Purchase Agreement between Sallyport and Debtor.

25. Exhibit "B" is a true and correct copy of the existing Bridge Loan Addendum to Accounts Sale and Purchase Agreement between Sallyport and Debtor.

26. Exhibit "C" is a true and correct copy of the existing Cash Flow Addendum to Accounts Sale and Purchase Agreement between Sallyport and Debtor.

27. Exhibit "D" is a true and correct copy of the existing Inventory Loan Addendum to Account Sale and Purchase Agreement between Sallyport and Debtor.

28. Exhibit "E" is a true and correct copy of the existing Term Loan Addendum to Accounts Sale and Purchase Agreement between Sallyport and Debtor.

29. Together, these five documents (Exhibits A, B, C, D, and E) constitute the full extent of Sallyport and Debtor's business relationship with one another. A, B, C, D, and E are true and correct copies of the documents evidencing Sallyport and Don Rose Oil, Inc.'s factoring agreement with one another and illustrate the terms of the deal.

30. It has always been my understanding that Debtor sold its accounts receivables pursuant to the agreement with Sallyport in which it received funds immediately thus alleviating Debtor's cash flow problems.

31. It is this existing agreement that Debtor desires to continue due to the benefits it receives pending a further and final hearing before the bankruptcy court. .

32. I have read the Motion which this Declaration accompanies and I am in full support of both the Motion and all the requests from Sallyport contained therein both as it relates to the interim and final financing of the Debtor in Possession.

33. I have prepared the Budget which is included Exhibit "F". Case I of the budget lists a scenario under Paragraph 11 of the Motion. This means that Sallyport funds an average of $93,247.03 per day which Sallyport is willing to do provided that the terms in paragraph 11 of the Motion are approved by the Court.

34. I have also prepared a Case II on the budget. Under Case II, Sallyport funds an average of $230,047.93 per day which Sallyport is willing to do provided that the terms in paragraph 12 of the Motion are approved by the Court at the final hearing. Sallyport would be willing to fund this greater amount due to the greater protection it has against third parties.

The above facts are within my personal knowledge and if called upon to testify at any hearing regarding this matter, I would so testify. I am over the age of 18 and I have signed this Declaration this 23 day of June, 2017 at Visalia, California.

_____
John Castellucci

DECLARATION IN SUPPORT OF MOTION FOR AUTHORITY -6-
TO USE FACTORING FINANCING

00147206-MPB-06.23.2017