WALTER WILHELM LAW GROUP
a Professional Corporation
Riley C. Walter #91839
Michael L. Wilhelm #101495
Matthew P. Bunting #306034
205 E. River Park Circle, Suite 410
Fresno, CA 93720
Telephone: (559) 435-9800
Facsimile: (559) 435-9868
E-mail: rileywalter@W2LG.com
mwilhelm@W2LG.com

(SPACE BELOW FOR FILING STAMP ONLY)

Attorneys for Debtor in Possession

IN THE UNITED STATES BANKRUPTCY COURT

EASTERN DISTRICT OF CALIFORNIA

FRESNO DIVISION

| | |
|---|---|
| In re<br><br>DON ROSE OIL CO., INC., a California corporation;<br><br>    Debtor in Possession.<br><br>Tax ID #:    94-2287631<br>Address:    205 N. Ben Maddox Way<br>                 Visalia, CA 93292 | **CASE NO. 17-12389-A-11**<br><br>Chapter 11<br><br>DC No.: WW-1<br><br>Date:    June 26, 2017<br>Time:    2:00 PM<br>Place:    2500 Tulare St.<br>           Fresno, CA 93721<br>           Courtroom 11, 5th Floor<br>Judge:    Honorable Fredrick E. Clement |

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR AUTHORITY TO USE FACTORING FINANCING**

Don Rose Oil Co., Inc., Debtor in Possession (hereinafter "Debtor"), hereby submits this Memorandum of Points and Authorities in Support of the Motion for Authority to Use Factoring Financing (the "Motion"). In support of the Motion, the Debtor respectfully represents as follows:

//

//

---

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR AUTHORITY TO USE FACTORING FINANCING     -1-     00147203-MPB-06.23.2017

# I.
# JURISDICTION

1. Under 28 U.S.C. § 1334(a): "Except as provided in subsection (b) of this section, the district courts shall have original and exclusive jurisdiction of all cases under title 11".

2. 28 U.S.C. § 1334(b) states: "Except as provided in subsection (e)(2), and notwithstanding any Act of Congress that confers exclusive jurisdiction on a court or courts other than the district courts, the district courts shall have original but not exclusive jurisdiction of all civil proceedings arising under title 11, or arising in or related to cases under title 11."

3. 28 U.S.C. § 157 states: "Each district court may provide that any or all cases under title 11 and any or all proceedings arising under title 11 or arising in or related to a case under title 11 shall be referred to the bankruptcy judges for the district."

# II.
# STATEMENT OF FACTS

5. Debtor is a jobber which sells and delivers propane and other oil products to its over 2,200 propane service tank holders (Dec. of Castellucci ¶1).

6. Debtor operates in a highly competitive market and being able to purchase and deliver the product quickly is a key component of the business (Dec. of Castellucci ¶4).

7. A business in this field that cannot deliver its products quickly will lose customers and eventually shut down due to the nature of this market. (Dec. of Castellucci ¶4).

//

8. Debtor currently employs 36 people, including John Castellucci as CEO. (Dec. of Castellucci ¶7 and 1).

9. An involuntary Chapter 7 bankruptcy case was filed against Debtor on June 19, 2017. (Dec. of Castellucci ¶8).

10. On June 22, 2017, Debtor filed a Chapter 11 proceeding becoming a Debtor in Possession. (Dec. of Castellucci ¶16).

11. The Debtor has immediate need for financing to continue its operations pending a further hearing. (Dec. of Castellucci ¶9).

12. Debtor runs the risk of losing personnel due to the lack of pay which will cause operations to cease. (Dec. of Castellucci ¶17).

13. Debtor does not have the use of factoring financing and cannot continue operations without selling its accounts receivable to generate funds to operate. (Dec. of Castellucci ¶3).

14. As a courtesy to Debtor, Sallyport Commericial Finance ("Sallyport") advanced $35,000 as an attorney retainer, $1,800 for a Chapter 11 filing fee, $50k for purchase of oil products, and $109k for wages, salaries, and payroll taxes all during the ordinary course of business in period between the filing of the involuntary petition and Debtor's Chapter 11 petition. (Dec. of Castellucci ¶12 and 13).

15. Sallyport refuses to continue to supply factoring financing without interim court approval. (Dec. of Castellucci ¶13).

16. Debtor relies upon factoring financing purchase fuel for resale, to meet payroll, and to continue to operate. (Dec. of Castellucci ¶17).

15. Without this factoring financing, Debtor will be unable to meet payroll or buy oil products for resale which will result in the business shutting down and losing

-3-

00147203-MPB-06.23.2017

value. (Dec. of Castellucci ¶17).

16. By the Motion, Debtor seeks authority to continue to use factoring financing to provide the funding necessary to operate and maintain the business while pending a further hearing. (Dec. of Castellucci ¶20).

17. Debtor has been unable to obtain financing with unsecured credit pursuant to Bankruptcy Code Section 364(a) or (b) allowed as an administrative expense under Bankruptcy Code Sections 503(b)(1) or on more favorable terms from any other sources. (Dec. of Castellucci ¶22).

18. Denial of the factoring financing does not benefit any creditor constituency but would cause significant harm to the Debtor's business operations. (Dec. of Castellucci ¶21).

19. By this Motion, Debtor may have other creditors having liens or security interest in the subject accounts receivable, however, Debtor seeks authority to use collateral of any such creditor, if any, provided the creditor was served with notice of this Motion. (Dec. of Castellucci ¶23). Debtor alleges that the requested use of factoring financing is for and in the best interests of the estate. (Dec. of Castellucci ¶23).

### III.
### DISCUSSION

20. As the Debtor in Possession, the Debtor's use of property of the Chapter 11 bankruptcy estate is governed by Sections 363 and 364 of the Bankruptcy Code. Section 363(b)(1) states:

"The trustee, after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate,…"

21. Thus, as accounts receivable are property of this estate, Section 363(b)(1)

states that accounts receivable can be sold after a notice and a hearing.

Section 363(f) states:

> The trustee may sell property under subsection (b) or (c) of this section free and clear of any interest in such property of an entity other than the estate, only if-…
> (2) such entity consents;

22. Here, the creditor Sallyport Commercial Finance (hereafter "Sallyport") is an entity which has a lien in the accounts receivable and is consenting to the continued sale of accounts receivable to them to generate funds for ongoing operations.

23. Section 364 of the bankruptcy code governs when the court can authorize the obtaining of credit and incurring debt.

24. Section 364(c) states:

> If the Trustee is unable to obtain unsecured credit allowable under section 503(b)(1) of this title as an administrative expense, the court, after notice and a hearing, may authorize the obtaining of credit or the incurring of debt- …
> (2) secured by a lien on property of the estate that is not otherwise subject to a lien; or
> (3) secured by a junior lien on property of the estate that is subject to a lien.

25. Here, Sallyport would continue to receive a lien on the accounts receivable of the Debtor.

26. Documents evidencing Sallyport's existing relationship with Debtor are included as Exhibits A, B, C, D, and E.

27. Don Rose Oil, Inc. is seeking authority to continue its factoring financing with Sallyport under the terms laid out in the Accounts Sale and Purchase Agreement

(Exhibit "A"), Bridge loan Addendum (Exhibit "B"), Cash Flow Addendum (Exhibit "C"), "Inventory Loan Addendum (Exhibit "D"), Term Loan Addendum (Exhibit "E") pending a further hearing.

28.　　The main terms of this deal, which is the exact same deal as existed pre-petition, are listed below:

    A.　　Sallyport will advance up to 90% of the gross face amount of each eligible account purchased.

//

    B.　　A Factoring Fee equal to .55% of the gross face amount of each account purchased at the time each account is purchased.

    C.　　An additional factoring fee shall be charged each day for each account purchased is outstanding to the extent the purchase price was paid in advance of its due date.

    D.　　All factoring fees under the agreement shall be computed and earned daily on the gross amount of the daily balance.

    E.　　An interest rate of 6.5%

The default rate will be equal to 10% plus the interest rate (6.5%) [ie. 16.5%]

    F.　　A maximum facility limit amount of $8,200,000.00

    G.　　A minimum monthly sales volume of $3,000,000.00.

    H　　An audit fee to Don Rose Oil, Inc. of $800 a day.

    I.　　A management fee of $1,000 each month.

29.　　Sallyport and Debtor's relationship from the filing of the involuntary period through the interim period is within the ordinary course of business because it meets the

vertical dimension test and the horizontal dimension test.

30. During this time, Sallyport advanced $35,000 as an attorney retainer, $1,800 for a Chapter 11 filing fee, $50k for purchase of oil products, and $109k for wages, salaries, and payroll taxes all during the ordinary course of business.

31. The horizontal dimension test requires the court to look to similar businesses and determines whether the transaction at issue is one that would normally be entered into by a similar business. See *In re Dant & Russell, Inc.*, 853 F.2d 700 (9th Cir. 1988).

32. Here, it is clear that a similar business would enter into a financing agreement post-petition that would allow the business to continue to operate because that is how the Debtor has been financing its operations pre-petition.

33. The vertical dimension test reviews the transaction from the perspective of creditors, asking whether the transaction is one that creditors would reasonably expect the debtor to enter into. See *In re Watford*, 159 B.R. 597 (M.D. Ga. 1993).

34. It is no surprise to creditors that a company that has relied on factoring financing pre-petition would continue to rely on factoring financing post-petition.

35. Finally, several courts have found attorneys' fees to be paid within the "gap period" within the ordinary course of business after an involuntary bankruptcy case was filed against a company. (See *In re Rundlett*, 137 B.R. 144 (Bankr. S.D.N.Y. 1992), and *In re Shah International Inc.,*, 94 B.R. 136 (Bankr. E.D. Wis. 1988). Courts have found this because "[a] putative debtor should not be prevented from obtaining skilled counsel solely because the debtor in in bankruptcy only because creditors succeeded in filing an involuntary petition prior to the time the debtor filed a voluntary petition." *In re May Lumber Co.,* 135 B.R. 368, 370 (Bankr. W.D. Mo. 1992)

36. In accordance with BR 4001(d)(1), the Debtor has served the Motion on all lease or executory contract creditors; all secured creditors; all taxing agencies; the twenty largest unsecured creditors; and the U.S. Trustee's Office. Under the circumstances, it is submitted that the notice with respect to this emergency Motion is proper, and the Court should approve the requested use of factoring financing and set a further hearing before the assigned Bankruptcy Judge on future uses of factoring financing.

### IV.
### CONCLUSION

37. Based upon the foregoing, the Debtor respectfully requests that this Court enter an order (i) approving the interim use of factoring financing at the hearing; (ii) authorizing the use of factoring financing on terms prescribed by the Court; (iii) setting a further hearing on uses of factoring financing and (vi) granting such other and further relief as the Court deems just and proper under the circumstances.

Dated: June 23, 2017

WALTER WILHELM LAW GROUP
A Professional Corporation

By: _____
Michael L. Wilhelm
Attorneys for Debtor in Possession